1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CLIFFORD BAIR,

11            Petitioner,              No. CIV S-08-CV-1039 MCE CHS P

12        vs.

13   CLAUDE FINN, et al.,

14            Respondent.         FINDINGS AND RECOMMENDATIONS

15   _____/

16                          **I.  INTRODUCTION**

17            Petitioner, Clifford Bair, is a state prisoner proceeding pro se with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate

19   sentence of twenty-seven years to life in prison with the possibility of parole following his

20   conviction for first degree murder with a penalty enhancement for false imprisonment in the Sonoma

21   County Superior Court.  Here, Petitioner does not challenge the constitutionality of that conviction,

22   but rather, the execution of his sentence, and specifically, the March 30, 2007 decision by the Board

23   of Parole Hearings finding him unsuitable for parole.

24                          **II.  ISSUES PRESENTED**

25            Petitioner alleges several grounds for relief in his pending petition.  Specifically,

26   Petitioner's claims are as follow:

1

(1)     The Parole Board failed to prove unsuitability with evidence.

(2)     The Parole Board violated his right to due process of law.

(3)     Continued reliance on unchanging factors to deny parole commutes his sentence from twenty-seven years to life into a sentence of life without the possibility of parole.

(4)     The Parole Board continues to violate section 3041(a)(b) of the California Penal Code.

(5)     The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") violates the ex post facto clause of the United States Constitution.

(6)     Denial of parole based upon the language of title 15, section 2402(c)(1)(A)-(E) of the California Code of Regulations is impermissible because the terms of the regulation are unconstitutionally vague.

Because the allegations in Petitioner's first four claims all assert due process violations, they will be addressed together herein as a single issue in section (V)(A), below. Petitioner's claims five and six are considered separately in sections (V)(B) and (V)(C), respectively. After careful consideration of the record and applicable law, it is recommended that this petition for writ of habeas corpus relief be denied.

### III. FACTUAL BACKGROUND

The basic facts of Petitioner's life crime were summarized by the Presiding Commissioner at Petitioner's parole hearing as follows:

> [O]n or about January 20th, 1984, your ex-wife, Linda Bair, left her home in Visalia to visit with family members in Bodega Bay. She had left you back at her home in Visalia without any transportation. Later that night, Inmate Bair stole a pickup truck and followed his ex-wife to Bodega Bay. You checked into the Harbor View Motel around noontime on January 24th under a false name.
>
> You had been seen at a motel on January 25th, however, the pickup truck was missing. On January 26th, you checked out of the Harbor View Motel and the stolen pickup truck was discovered about a mile and a half from Bodega Bay down in a ravine totally burned up. The pickup truck was stripped of its license plate when found. On January 26th, you purchased a six-pack of beer, a sandwich, a package of peanuts, and some potato chips at the Dry Dock Café. The Dry Dock Café is approximately 75 yards away from Ms. Teresa

Aiken's house and forms a triangle with the Harbor View Motel.

Apparently you had been a resident of Bodega Bay a few years earlier and had done some yard work for the victim, Teresa Aiken, during that time. During the afternoon of January 26th, you went to Mrs. Aiken's house, overpowered her, took her eyeglasses, rendering her almost blind, tied her up, and gagged her. You then placed her underneath her bedding and mattresses on the floor of her bedroom.

At approximately 4:00 to 4:15 p.m., Ms. Rose Fomasi came over to deliver Ms. Aiken's mail. After Ms. Fomasi entered the house, you pulled a gun and ordered her to lay down on the floor in the bedroom and not to look at your face. You then tied up Ms. Fomasi with the electrical wire from Ms. Aiken's iron. You then left the residence taking Mrs. Aiken's eyeglasses, keys, and her car.

Later that night, you abandoned Mrs. Aiken's car after getting stuck on the shoulder of the Lakeville Highway across from Gilardi's resort. Gilardi is spelled G-I-L-A-R-D-I. You then stole an ocean going sailboat from the Lakeville Marina which is part of Gilardi's resort.

On January 27th at approximately 7:30 a.m., the owner of the sailboat noticed the sailboat was missing from its berth. The owner subsequently found his sailboat a short distance away stuck on the mud bank of the Petaluma River. As the owner approached the boat, the owner observed you waving what appeared to be a shotgun or a length of pipe ordering the owner to stay away. The owner then retreated back to the marina where he watched his boat until Sonoma County Sheriff's deputies arrived.

While watching the boat, the owner observed you leave the boat and disappear into the surrounding area. You were eventually found a short distance from the Board [sic] hiding in a floodgate. When you were arrested, you were found to be wearing clothing taken from the boat and had in your possession a flare gun, flares, shotgun shells, and a sic 182 white tablets later determined to be amphetamine.

After your arrest, you were brought to the police interview room. While waiting to be interviewed, you cut one of your wrists with a piece of plastic in an apparent suicide gesture. You were taken to the community hospital for treatment. The autopsy of Mrs. Aiken revealed that her death was caused by chronic pulmonary disease, chronic cardiac disease and multiple traumatic injuries. These injuries included bruising of the mouth and lips, swollen hands from being tied behind her back with multiple loops of ropes, petechial hemorrhages noted on both hands mainly dorsally. The right hand was confluently purple in coloration and massively swollen. The pathologist found that the tying of the victim's hands contributed very significantly to her death.

3

1
2
3

> And I am not reading into the record some of the forensic matters such as fingerprints, et cetera, that were taken from various items that tied you to the sequence as noted such as, I believe, the mentioning of the beer and the sandwich wrapper and the chip bags. I think some of those items had your fingerprints on it.

4   (Pet. Ex. AA at 111-115.)  Following a jury trial, Petitioner was convicted of first degree murder an

5   enhancement for false imprisonment.  He was sentenced to twenty-seven years to life in prison, and

6   his minimum eligible parole date passed on September 17, 2000.  On March 30, 2007, Petitioner

7   appeared before the Board of Parole Hearings (the "Board") for his third overall parole hearing.

8   After considering various positive and negative suitability factors, the panel determined that

9   Petitioner would pose an unreasonable risk of danger to society if released, and concluded that he

10  was not suitable for parole.  Petitioner sought habeas corpus relief from the Board's determination

11  in the Sonoma County Superior Court.  On September 21, 2007, the court denied his petition in a

12  reasoned decision, finding that although the Board's determination that Petitioner lacked insight into

13  the commitment offense and required family therapy were not supported by the record, the Board's

14  conclusion that Petitioner was unsuitable for parole was nonetheless supported by "some evidence."

15  The California Court of Appeal, First Appellate District, and the California Supreme Court denied

16  habeas corpus relief without comment.  Petitioner filed his federal petition for writ of habeas corpus

17  on March 5, 2008.  Respondent filed an answer on March 12, 2010, and Petitioner filed his traverse

18  on March 30, 2010.

19  ### IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

20          This case is governed by the provisions of the Antiterrorism and Effective Death

21  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

22  its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

23  F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

24  person in custody under a judgment of a state court may be granted only for violations of the

25  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

26  375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits

in state court proceedings unless the state court's adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V.  DISCUSSION

### A.  Due Process in the California Parole Context

Petitioner claims that the Board's 2007 determination that he was unsuitable for parole violated his Fourteenth Amendment right to due process of law.  In support of this claim, Petitioner alleges that the Board's unsuitability determination was not supported by substantial evidence in the record that he remained a current danger to public safety.  Petitioner contends that the Board  violated his right by continuing to rely on unchanging factors to deny him parole without any other evidence that he remains an unreasonable risk of danger to society.  Moreover, Petitioner claims that the Board violated his rights by failing to set a parole release date in his case, thus failing to adhere to the mandate of section 3041(b) of the California Penal Code that the Board "shall set a release date" unless it determines that "consideration of the public safety requires a more lengthy period of incarceration . . . ."  CAL. PENAL § 3041(b).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law."  U.S. CONST. AMEND. XIV, § 2.  A person alleging a due process violation must first

5

demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't. Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). In the context of parole,

> [t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. [ ]. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.

*Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011). *See also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Here, because California's statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutionally protected liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442 U.S. at 12). *See also Swarthout*, slip op. at 4 ("[T]he Ninth Circuit held that California law creates a liberty interest in parole . . . . While we have no need to review that holding here, it is a reasonable application of our cases." (internal citations omitted)).

Despite the existence of this liberty interest, it is well established that inmates are not guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of parole, we have held that the procedures required are minimal."). *See also Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The United States Supreme Court has held that the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to

1  be heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5. *See also Greenholtz*,

2  442 U.S. at 16.

3          In addition, as a matter of state constitutional law, denial of parole to California

4  inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable

5  risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29

6  Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole

7  must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re*

8  *Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). However, California's "some evidence"

9  requirement is a substantive right provided by the state of California, and thus is not afforded

10  protection by the federal due process clause. *Swarthout*, slip op. at 5. Indeed, the Supreme Court

11  has held that "[n]o opinion of [that court] supports converting California's 'some evidence'

12  requirement into a substantive federal requirement." *Id*. Moreover, the Supreme Court has long

13  recognized that alleged violations of state law are not cognizable on federal habeas corpus review.

14  *Id*. at 6; *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a

15  federal habeas court to reexamine state court determinations on state law questions"); *Smith v.*

16  *Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches

17  only convictions obtained in violation of the United States Constitution.").

18          Here, the record reflects that Petitioner was present at his 2007 parole suitability

19  hearing, that he participated in the hearing, and that he was provided with the reasons for the

20  Board's decision to deny parole. The federal due process clause requires no more. Moreover, to

21  the extent that Petitioner's claim rests on his allegation that the Board failed to follow California

22  state law or procedure because its decision is not supported by sufficient evidence, it is not

23  cognizable in a federal petition for writ of habeas corpus. *Middleton v. Cupp*, 768 F.2d 1083, 1085

24  (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). As discussed above,

25  a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some

26  transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v.*

1   *Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  Petitioner has received all process he was due and is

2   thus not entitled to federal habeas corpus relief on his claim that the Board's unsuitability

3   determination violated his federal right to due process of law.

4   **B. Ex Post Facto**

5          Petitioner claims that application of the Anti-Terrorist and Effective Death Penalty

6   Act ("AEDPA") to his case violates the federal constitution's Ex Post Facto Clause because it is a

7   change in the law which "alters the rules of evidence, so that less or different evidence is needed for

8   conviction than before or . . . [,] criminalizes an act which was not an offense before the change or

9   increases the punishment . . . ."  (Pet. at 5.)

10          The United States Constitution provides that "No State shall . . . pass any . . . ex post

11   facto Law."  U.S. CONST. ART. I, § 10.  *See also Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir.

12   2003).  A law violates the Ex Post Facto Clause of the United States Constitution if it punishes as

13   criminal an act that was not criminal when it was committed, makes a crime's punishment greater

14   than when the crime was committed, or deprives a person of a defense available at the time the crime

15   was committed.  *See Collins v. Youngblood*, 497 U.S. 37. 52 (1990) ("Although the Latin phrase 'ex

16   post facto' literally encompasses any law passed 'after the fact,' it has long been recognized . . . that

17   the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage

18   the offender affected by them.").

19          Here, Petitioner was sentenced to a term of twenty-seven years to life in prison with

20   the possibility of parole following his plea of nolo contendere to first degree murder with a penalty

21   enhancement for false imprisonment in 1984.  Petitioner has cited no specific facts in support of his

22   contention that AEDPA violates the Ex Post Facto Clause.  *See James v. Borg*, 24 F.3d 20, 26 (9th

23   Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not

24   warrant habeas relief.").  Moreover, Petitioner has cited no relevant authority in support of his

25   claims.  Petitioner has failed to demonstrate that application of AEDPA to his particular case has

26   punished an act that was not criminal when committed, enhanced or altered his sentence in any way,

1  or deprived him of a defense available at the time the crime was committed.  While Petitioner may

2  have hoped or expected to be released sooner, the maximum duration of his commitment was set at

3  life in prison long before AEDPA was enacted as law.  Petitioner is not entitled to habeas corpus

4  relief on this claim.

**C. Section 2402(c)(1) of the California Code of Regulations**

6          Petitioner claims that the Board has deemed him unsuitable for parole based on the

7  commitment offense, which the Board continues to describe as cruel, callous, and committed with

8  a trivial motive.  According to Petitioner, section 2402(c)(1) of the California Code of Regulations

9  is unconstitutionally vague because it provides no meaningful standards by which to narrow the

10  types of offenses to which the regulation should apply.

11          Section 2402(c)(1) sets forth the standards by which the Board determines whether

12  the timing and gravity of the commitment offense was carried out in "an especially heinous,

13  atrocious or cruel manner" such that the consideration of public safety requires a more lengthy

14  period of incarceration.  Specifically, the regulation sets forth a non-exhaustive list of five factors

15  to be considered, including:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution style murder.
>
> (C) The victim was abused, defiled or mutilate during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 CAL. CODE REGS. § 2402(c)(1).

          Generally, a regulation is void for vagueness "if it fails to give adequate notice to

people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

1    discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989).  *See*

2    *also Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1134 (9th Cir. 2007) ("To survive a

3    vagueness challenge, the statute must be sufficiently clear to put a person of ordinary intelligence

4    on notice that his or her contemplated conduct is unlawful."); *Foti v. City of Menlo Park*, 146 F.3d

5    629, 638 (9th Cir. 1998) (A statue must be sufficiently clear so as to allow persons of ordinary

6    intelligence a reasonable opportunity to know what is prohibited.).  "[A] party challenging the facial

7    validity of [a law] on vagueness grounds outside the domain of the First Amendment must

8    demonstrate that the enactment is impermissibly vague in all of its applications."  *Hotel & Motel*

9    *Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotations

10   omitted).  Moreover, "[t]he Due Process Clause does not require the same precision in the drafting

11   of parole release statues as is required in the drafting of penal laws."  *Hess v. Bd. of Parole and Post-*

12   *Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008) (citing *Glauner v. Miller*, 184 F.3d 1053,

13   1055 (9th Cir. 1999)).  The statue need only make a "principled distinction" between those who are

14   suitable for parole and those who are not.  *Id.*

15           Petitioner's claim that section 2402 is void for vagueness is without merit.  As noted

16   above, the Board must take into consideration all of the factors set forth in section 2402(c)(1) in

17   determining whether a commitment offense was "especially heinous, atrocious or cruel" such that

18   it remains indicative of a prisoner's current risk of danger to society.  The Board cannot merely

19   characterize a murder as heinous and deny parole.  Indeed, several other district courts in this circuit

20   have recognized that "because these sub-factors [in section 2402(c)(1)] are set forth in simple plain

21   words, such that a reasonable person of ordinary intelligence would understand their meaning and

22   the conduct they proscribe, the notice requirement is satisfied."  *Edwards v. Curry*, 2009 WL

23   1883739 at *9 (N.D.Cal. 2009) (citing *Hogue*, 752 U.S. at 1504); *see also Wagoner v. Sisto*, 2009

24   WL 2712051 at *6 (C.D.Cal. 2009) (stating that "the five sub-factors outlined in § 2402(c)(1)(A)-(E)

25   serve to limit the 'heinous, atrocious or cruel' language of section 2402(c) and narrow the class of

26   inmates that are found unsuitable for parole...thus, the terms are not unconstitutionally vague.").

1  Because the term "especially heinous, atrocious, or cruel" is further limited by these five detailed

2  factors, it is not unconstitutionally vague. *See Arave v. Creech*, 507 U.S. 463, 470-78 (1993) (Idaho

3  death penalty statute which cited as an aggravating factor that the crimes were carried out in "utter

4  disregard for human life" was not impermissible vague because limiting construction had been

5  adopted defining this factor as demonstrating "the utmost disregard for human life, i.e. the cold-

6  blooded pitiless slayer").

7        In addition, the sections of the California Code of Regulations governing parole

8  determinations have not been found to be unduly vague or overbroad under federal law.  Nor has

9  federal law been found to preclude the use of terms such as "especially cruel" or "callous as

10 guidelines in parole suitability evaluations. *Cf. Maynard v. Cartwright*, 486 U.S. 356, 363-64

11 (1988) (in a capital case, the "especially heinous, atrocious or cruel" aggravating circumstance was

12 unconstitutionally vague because it did not offer sufficient guidance to the jury in deciding whether

13 to impose the death penalty); *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (noting that statutory

14 aggravating circumstances in capital cases "may not be unconstitutionally vague").  Accordingly,

15 Petitioner is not entitled to federal habeas corpus relief on this claim.

16                        **VI.  CONCLUSION**

17       Accordingly, IT IS RECOMMENDED that Petitioner's petition for writ of habeas

18 corpus be DENIED.  These findings and recommendations are submitted to the United States

19 District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

20 twenty-one days after being served with these findings and recommendations, any party may file

21 written objections with the court and serve a copy on all parties.  Such a document should be

22 captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

23 objections shall be served and filed within seven days after service of the objections.  Failure to file

24 objections within the specified time may waive the right to appeal the District Court's order. *Turner*

25 *v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

26 any objections he elects to file petitioner may address whether a certificate of appealability should

issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: February 4, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

12